(No. 4111—)

TRANSAMERICAN FREIGHT LINES, INC., Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed December 9, 1948.*

SAMUEL M. KANE, Attorney for Claimant.

HON. GEORGE F. BARRETT, Attorney General; WILLIAM J. COLOHAN, Assistant Attorney General, for Respondent.

DAMRON, J.

This is a claim for damages arising out of a purported collision between claimant's tractor trailer and respondent's snow plow on February 14, 1948, three miles north of Lincoln, Illinois, on State Route No. 121. The evidence in the case was taken before the commissioner on October 28, 1948.

Belmont Sheeley, the driver of claimant's tractor trailer, was the only witness who testified on claimant's behalf. He estimated the roadway at the point of the purported collision to be about 18 feet wide. He estimated the tractor trailer to be 8 feet wide with single wheels in front and dual wheels on the rear. He estimated the over-all length to be about 30 feet. Sheeley testified that the weather was clear but the roadway was icy.

He testified he was driving about 20 to 25 miles an hour northward on highway No. 121 and came up behind a snow plow which also was travelling north. He said he flashed his lights at the plow and waited until the lights on the plow were flashed back to him to proceed. When he first saw the snow plow, he said it was on the right side or east side of the highway. He estimated the shoulder on the east side to be about 6 feet wide and he said the plow was straddling the edge of the pavement with its left wheels on the pavement and its right wheels on the shoulder. Before passing, he said he moved over to the left side of the road with two wheels on the left shoulder. He said he did not know how many feet there were between the right side of his unit and the left side of the snow plow at the time he was passing the plow but estimated it might have been 5 or 6 feet between the two vehicles.

He said the cab of his tractor had passed on and

had cleared the snow plow to his right when he felt an "awful jar". This was the first and only knowledge he had of a collision. He said thereafter his tractor travelled about 20 feet and slid in the ditch on the right side of the road and when he came to a halt he was facing east. No one was injured.

Thereafter he inspected his unit and found the driveshaft of his tractor in the center of the roadway, and the rear axle was broken and was setting at the rear of the trailer, the brakes and shackle were torn out of the unit and there was a sharp cut in the right inside rear tire of the tractor and also a cut on the rear frame of the tractor. The trailer was not damaged. He identified receipts evidencing $214.24 for repairs and testified the unit was out of commission for five days and that the fair and reasonable rental charge was $10.00 per day. He was not corroborated by other witnesses.

On cross examination he testified there was snow on the highway but as he approached the plow, he could see where the left of the highway had been cleared and the right side of road was then being cleared. He also testified on cross examination that he did not see the blade extending out from the plow. He felt no skid. He also testified there was no curve ahead of him when he came up behind the plow although he was watching the road ahead, yet he paid no attention to the lights of the plow. He testified he could not have been more than 2 feet ahead of the headlights on the snow plow when he felt a jar. This was all the testimony offered on behalf of the claimant before the commissioner.

William Awe, employee of the Division of Highways, was the driver of the snow plow in question, was the only defense witness. He testified that he was driving his truck in a northerly direction. There was a snow

blade about ten feet wide attached to the front of the truck.

It was "stormy, snowing, and blowing" at the time. He was travelling on the right side of the road. The blade was at an angle of about 45 degrees to the front of the truck with the left end of the blade extending forward about four feet from the truck throwing the snow into the ditch. The over-all width of his vehicle with the plow in that position was 8 feet 4½ inches.

Awe further testified that immediately before the accident a vehicle approached from the rear and flashed a signal to pass but he did not return the signal because they were around a double curve at that point and the weather was such one could not see ahead. The vehicle coming from the rear followed him around the curve and after the snow plow came out of the curve and Awe had a clear view ahead he blinked his lights to indicate it was safe for the vehicle coming from the rear to pass.

Just as the vehicle was passing the plow there was a jar and the plow swung completely around going into the ditch on the west side of the road facing west. As the other vehicle was passing and at the time of the impact Awe was watching the left edge of the blade about eight inches to the right of the black center line of the road. He was travelling straight ahead not over ten miles per hour at the time; the truck not over twenty-five m.p.h. The truck travelled about 200 feet down the road after the impact. There was some ice on the pavement and at the point of passing a little snow over the ice. The front left end of the blade was damaged.

On cross examination Awe stated his truck was 6½ feet wide. The road was nineteen feet wide. His left wheels were 2½ feet to the right of the center line of the road and his right wheels were close to the edge of

the road but not off the shoulder. The left edge of his snow blade was about six inches to the east of the center line. The snow was about one-half inch deep on the ice.

Sheely testified on rebuttal that before he got to the curve he met a car approaching from the opposite direction and dimmed his lights for this car and then flashed them on again. At that time he was about a quarter of a mile back of the snow plow.

The foregoing is a carefully detailed statement of the only two witnesses to this accident.

It is not possible to reconcile the indisputable fact of the collision with the testimony of the respective witnesses. If Sheely as he was passing the plow was proceeding straight ahead about five or six feet to the left of the plow obviously the latter must have veered left into Sheely's unit. On the other hand if Awe was proceeding straight ahead at the time then claimant's unit must have veered or skidded into the snow plow. There is no evidence in this record which justifies this Court in resolving that question of fact adversely to respondent. It is reasonable to surmise that both vehicles did proceed straight ahead as both witnesses say and that Sheely as he passed did have sufficient room to clear the truck body of the plow, but failed to observe the blade extending four feet to the left of the body of the snow truck. If so, he was guilty of contributory negligence in failing to see the blade directly ahead of him. On this state of the record we can merely speculate as to the proximate cause of this accident. No award of this Court can proceed from mere conjecture.

The elements of proof necessary in claim under Section 8, Par. (c) of the Court of Claims Act as amended (Ill. Rev. Stat. 1947, Chap. 37, Par. 439.8) are that claimant must prove by a preponderance or greater weight

of the evidence that the agent of respondent was guilty of negligence which was the proximate cause of the damages sustained by it and that claimant's agent was in the exercise of due care at the time of the accident.

It is the opinion of this Court, therefore, that the claimant has not established a clear right to an award for damages as required by law. Award denied.