(No. 6005 & 6175— )

DAVID BROCKMAN, individually, TWYLA BROCKMAN and BRENT BROCKMAN, Minors, by DAVID BROCKMAN, their father and next friend, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 11, 1975.*

PEFFERLE, MADDOX & GRAMLICH, by JOSEPH W. MADDOX, Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; DOUGLAS OLSON, Assistant Attorney General, for Respondent.

PERLIN, C. J.

These consolidated cases arise out of an automobile accident that occurred on November 15, 1968, which resulted in the death of Evie Brockman and injuries to her son, David Brockman, and his children, Twyla and Brent Brockman.

In cause number 6005, David Brockman is suing in both his individual capacity and as father and next friend of Twyla and Brent Brockman and seeks $25,000 in damages for personal injuries and property damage sustained by them. Cause number 6175 is a wrongful death action in which David Brockman, as administrator of the estate of Evie Brockman, seeks $1,500 for burial expenses incurred for Evie Brockman.

On November 15, 1968, David Brockman was driving a 1965 Chevrolet sport van truck in a southwesterly

direction on the U.S. Route 66 by-pass in Springfield, Illinois. The accident occurred at about 9:30 p.m. at approximately 100 feet northeast of a C & IM Railroad overpass that intersected the road.

It had been raining steadily all day, and Brockman's vehicle struck an accumulation of water on the highway. The van went out of control and travelled across the highway into the median strip, sideswiped a tree, and came to rest against the cement abutment of the railway overpass.

Evie Brockman was killed in the accident. Brent Brockman suffered a broken right arm and Twyla Brockman suffered a broken collarbone. David Brockman received head injuries which he alleged caused severe headaches for several years and prevented him from working.

Claimants assert that Respondent was negligent in designing the highway and the highway's drainage system in such a manner as to permit water to accumulate on the road and in failing to install and maintain warning devices to advise drivers that a dangerous condition existed on the highway. The State contends that the highway and drain were not negligently designed or maintained.

At the accident site the U.S. Route 66 by-pass is a four lane highway divided by a 33-foot wide median with a posted speed limit of 45 miles per hour. The road and drainage facilities were build in 1937. The drainage facilities consist of a 12 foot by 5.5 foot concrete box culvert running diagonally east and west under the pavement directly north of the C & IM Railroad crossing. Twelve inch storm sewers are located on either curb of the southbound lanes just north of the box culvert and drain into the culvert. About 90 feet north of the box culvert there is an additional 12-inch storm sewer on the east curb of the southbound lanes.

David Brockman testified that it had been raining constantly on November 15, 1968. At the time of the accident he was travelling about 40 miles per hour, and his car lights and windshield wipers were operating. He described the visability as "good," but said that as he approached the accident site, he was not able to see the water on the pavement. He said he didn't remember anything about how the accident occurred from the time his van struck the water.

Harold B. Edwards, an Illinois State Trooper who investigated the accident, testified that he observed a six-inch deep accumulation of water on the road to the northeast of where the Brockman vehicle left the highway. He located a clogged drain beside the roadway from which he removed some debris. The road thereafter drained water in about 40 minutes.

Edwards stated that he had driven over the highway "many times" when it had been raining but did not recall whether he had ever seen water accumulate on the road. On cross-examination Trooper Edwards testified that he had passed the accident site "many, many times" but had never seen water on the pavement at the point of the accident.

Edwards said that as he approached the scene of the accident, he could see the water on the pavement from about 150 to 200 feet ahead.

Claimants introduced into evidence a United States Department of Commerce Climatological data sheet for Springfield, Illinois, which showed that 1.03 inches of rain fell on November 15, 1968.

George Helmerich, an engineer employed by the Illinois Division of Highways, testified for Respondent that he had supervisory authority over the maintenance of Sangamon County highways in 1968 and in particu-

lar over the portion of the U.S. Route 66 by-pass whereon the accident occurred.

Helmerich identified photographs of the storm drains along the highway and stated that they were standard drains as used generally throughout the highway system. He further stated he was aware of no prior instances of the drain at the accident site becoming plugged. He said that there had been other areas where drains became plugged, but that the accident site was not a "problem area."

Helmerich said that the 30-foot wide median area drained onto both the northbound and southbound lanes, and that it was possible that the drainage carried with it twigs, leaves and dry grass which clogged the drain.

On November 15, 1968, Helmerich had assigned two men to clear and repair sewers on the section of roadway whereon the accident occurred. It was customary for the men to clear sewers in rainy weather in areas where they had previously experienced drainage problems. He testified that the men worked from 8:00 a.m. until 4:30 p.m. and travelled over the entire section of roadway cleaning any areas that were not draining.

It is axiomatic that the State is not an insurer of the safety of all persons who use its highways but is only required to use reasonable diligence in maintaining the roadways under its jurisdiction and control. *Breens v. State of Illinois, 21 Ill.Ct.Cl. 83*. In order to recover for their injuries, Claimants bear the burden of proving by a preponderance of the evidence that Respondent breached its duty of reasonable care, that they were themselves free of contributory negligence, and that the negligence of Respondent proximately caused their injuries.

Claimants seek to charge Respondent with negligence in both the design and maintenance of the highway. Claimants first argue that because the highway and drain were designed in such a fashion as to permit debris and twigs to wash from the median onto the drain on this occasion, Respondent was negligent.

This highway had been designed in 1937. The record fails to show even one accident caused by flooding in the 31 year interval between the design of the highway and the instant action. Illinois State Trooper Edwards, who had been assigned to Sangamon County for 16 years, testified that he had passed the accident site many times when it had been raining and could not recall its flooding previously.

George Helmerich, an engineer in charge of maintaining the accident site, stated that the accident site was not a problem area with reference to flooding. Further, Helmerich also said that the drain which had become plugged was of a standard design used throughout the highway system.

Claimants have presented no testimony to indicate that the design of the highway and drains were not in conformity with accepted standards in the industry at the time they were constructed, and the record is bare of any evidence of prior flooding which would have put Respondent on notice of the existence of a dangerous condition at the accident site. That in a single instance a drain became clogged is not proof that either the highway or the drain were negligently designed.

Claimants' contention that the State was negligent in failing to properly maintain the road and drain must also be rejected. Claimants contend that in employing only two men to check drains from 8:00 a.m. to 4:30 p.m. on the day of the accident, the State did not act with

reasonable diligence. Essentially, Claimants argue that because it was raining on November 15, 1968, the State should have kept men on duty cleaning drains until the rain ceased.

Again, this record is devoid of any testimony upon which the State can be charged with constructive notice of the tendency of the portion of highway in question to flood. The testimony of the State's engineer that this was not a "problem area" is uncontradicted, and we are not convinced that the State in the exercise of reasonable diligence was required to maintain a constant surveillance over this drain on the chance that it might clog and flood the highway.

Although the Court regrets the damages suffered by Claimants, we conclude that Claimants have failed to prove negligence on the part of Respondent, and these claims are accordingly denied.